[A1] 

 

 

 

 

 

                                COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-06-361-CR

 

 

ROBERT DAVID BRACKEN                                                    APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM COUNTY
CRIMINAL COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

A jury convicted Appellant Robert David Bracken
of driving while intoxicated (DWI) enhanced by a prior DWI conviction.  The trial court sentenced Appellant to sixty
days=
incarceration in the Tarrant County Jail and assessed a fine of $1,000.  In three points, Appellant contends that the
trial court erred by denying his motions to suppress, by denying his motion to
limit any direct or indirect references to any prior arrests or convictions for
DWI, and by allowing improper closing argument. 
We affirm.








                                            Background

On September 3, 2004, Appellant was charged by
information with driving while intoxicated. 
The charging instrument contained an enhancement paragraph relating to
Appellant=s previous DWI conviction.

On October 16, 2006, at a pretrial hearing, the
trial court orally granted Appellant=s motion
to prevent reference to any prior convictions and his motion to limit the
prosecutor from referencing any prior DWI arrest or conviction.  The trial court also considered Appellant=s
motions to suppress, which sought to suppress any evidence seized by the
officers in connection with the detention and arrest and any officer testimony
concerning such evidence.  After hearing
testimony from the arresting officer, Tarrant County Sheriff=s Deputy
Howard Johnson, and Appellant and reviewing the in-car video of Appellant=s
driving made by Deputy Johnson during part of the time that he was following
Appellant, the trial court orally denied Appellant=s motion
to suppress. 








The videotape also captured Appellant=s
sobriety tests performed at the police station. 
While the jury was deliberating, the jurors asked to see the videotape
of Appellant=s tests at the stop and at the
station.  By agreement, the video was
forwarded to the point of the test at the stop that would prevent the jury from
hearing the part of the tape referencing Appellant=s prior
conviction for DWI.  But the judge noted
that the Aentire exhibit=s in
evidence@ and Aif they
want to see it, I=m going to let them see it.@  The jury was given the tape to watch in the
jury room.

1.     Motion to Suppress

In his first point, Appellant argues the trial
court erred by denying his motion to suppress because the State failed to show
that Deputy Johnson had a reasonable suspicion for the initial traffic stop.[1]








                                       Standard
of Review








We
review a trial court=s ruling on a motion to suppress
evidence under a bifurcated standard of review. 
Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24B25 (Tex.
Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App.
2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696
(Tex. Crim. App. 2006).  Therefore, we
give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez,
195 S.W.3d at 108B09; Johnson v. State, 68
S.W.3d 644, 652B53 (Tex. Crim. App. 2002).  But when application-of-law-to-fact questions
do not turn on the credibility and demeanor of the witnesses, we review the
trial court=s rulings on those questions de
novo.  Amador, 221 S.W.3d at 673; Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68
S.W.3d at 652B53.

Stated
another way, when reviewing the trial court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.  Wiede, 214 S.W.3d at 24; State v.
Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact
findings, we determine whether the evidence, when viewed in the light most
favorable to the trial court=s
ruling, supports those fact findings.  Kelly,
204 S.W.3d at 818B19.  We then review the trial court=s legal
ruling de novo unless its explicit fact findings that are supported by the
record are also dispositive of the legal ruling.  Id. at 819.

                                      Reasonable
Suspicion

The
Fourth Amendment protects against unreasonable searches and seizures.  U.S. Const. amend. IV.  To suppress evidence because of an alleged
Fourth Amendment violation, the defendant bears the initial burden of producing
evidence that rebuts the presumption of proper police conduct.  Torres v. State, 182 S.W.3d 899, 902
(Tex. Crim. App. 2005); Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim.
App. 2005).  A defendant satisfies this
burden by establishing that a search or seizure occurred without a
warrant.  Torres, 182 S.W.3d at
902; Ford, 158 S.W.3d at 492. 
Once the defendant has made this








showing,
the burden of proof shifts to the State, which must then establish that the
government agent conducted the search or seizure pursuant to a warrant or that
the agent acted reasonably.  Torres,
182 S.W.3d at 902; Ford, 158 S.W.3d at 492.

The
Supreme Court has held that a detention is reasonable under the Fourth
Amendment if the government agent reasonably suspects a person of engaging in
criminal activity.  Terry v. Ohio,
392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968); Carmouche v. State, 10 S.W.3d
323, 328 (Tex. Crim. App. 2000).[2]  Reasonable suspicion exists when, based on
the totality of the circumstances, the officer has specific, articulable facts
that when combined with rational inferences from those facts, would lead the
officer to reasonably conclude that a particular person is, has been, or soon
will be engaged in criminal activity.  Ford,
158 S.W.3d at 492B93.  This is an objective standard that disregards
any subjective intent of the officer making the stop and looks solely to
whether an objective basis for the stop exists. 
Id. at 492.

                                               Analysis








At the
suppression hearing, Deputy Johnson testified that he began to follow Appellant=s
vehicle after he saw approximately half of the vehicle cross the yellow center
lane divider at approximately 1:30 a.m. on FM 1187, a two-lane rural road that
was undergoing construction work.  He
said that as he followed Appellant, Appellant weaved from one side of the lane
to the other repeatedly, crossing or driving on the white and yellow lines and
lane bumps several times.  He testified
that Appellant=s driving indicated to him Athat [he]
possibly had an intoxicated driver on hand.@  When asked on cross-examination whether
Appellant=s failure to maintain a single
lane was dangerous, he answered that it was dangerous to Appellant himself
because he was weaving in a construction zone with no shoulder and with
concrete barriers and traffic barrels on the side of the road.  He agreed that under the circumstances
present at the time, i.e., a construction zone with no shoulder, it could be
safer to drive closer to the center line if no oncoming traffic was
present.  After reviewing the in-car
video he made during the pursuit, Deputy Johnson admitted that at one point his
own vehicle drove on the lane bumps but said that in so doing he did not create
a danger to anyone else.

The
trial court also reviewed the in-car video, as has this court.  It shows Appellant=s car
drifting back and forth, repeatedly driving on or over the ABotts
Dots,@ or lane
bumps, and paint-marker flags at either edge of the lane as it travels through
a construction zone on a two-lane country road in the dark.








Appellant
testified that he never crossed the center line.  He said that his tires touched the
center-line lane bumps once or twice, but as soon as he felt the bumps, he
moved back into the center of the lane.








Deputy
Johnson identified three aspects of Appellant=s
driving as giving rise to a reasonable suspicion for the traffic stop:
Appellant=s crossing over the center line
by half a vehicle=s width; crossing or driving on
the fog line; and weaving back and forth within his lane over the course of
several miles, which led him to suspect that Appellant was intoxicated.  Transportation code section 545.051 provides
that an operator on a roadway of sufficient width shall drive on the right half
of the roadway unless the operator is passing another vehicle, an obstruction
necessitates moving the vehicle to the left of the center of the roadway, the
operator is on a roadway divided into three marked lanes for traffic, or the
operator is on a roadway restricted to one-way traffic.  Tex. Transp. Code Ann. '
545.051(a) (Vernon 1999).  Deputy Johnson
testified that when he first saw Appellant=s
vehicle, Appellant crossed the center line of the two-lane, two-way roadway by
half a vehicle=s width; in other words,
Appellant failed to drive on the right, and none of section 545.051(a)=s
exceptions to this requirement apply. 
This observation alone was enough to create a reasonable suspicion that
Appellant had violated the law.  See
Rubeck v. State, 61 S.W.3d 741, 745 (Tex. App.CFort
Worth 2001, no pet.) (op. on reh=g)
(holding officer=s observation of defendant=s
vehicle crossing center line one time provided reasonable suspicion for traffic
stop).








Appellant
cites Ehrhart v. State, 9 S.W.3d 929 (Tex. App.CBeaumont
2000, no pet.), for the proposition that a vehicle=s
touching the fog line two or three times does not justify a stop.  In that case, one officer testified that the
defendant=s vehicle crossed the left white
line (not the yellow center stripe) once and the right white line twice.  Id. at 930.  Another officer testified that the defendant=s
vehicle only touched the right white line twice.  Id. 
There was no evidence that the defendant=s
failure to maintain a single lane of travel was unsafe.  Id. 
Ehrhart is distinguishable from this case because it involved a
different section of the transportation code, section 545.060(a), which
provides that a driver must drive as nearly as practical within a single lane
and may not move from the lane unless that movement can be made safely.  Tex. Transp. Code Ann. '
545.060(a) (Vernon 1999).[3]  We need not decide whether the suppression
hearing evidence in this case supports a reasonable suspicion that Appellant
violated section 545.060(a) because we have already determined that the
evidence justified a stop based on Appellant=s
violation of section 545.051(a), which does not contain an Aunless
the movement can be made safely@
exception to the prohibition against crossing the center line.  See id. ' 545.051(a).  Thus, whether Appellant could safely cross
the center line is irrelevant to our reasonable suspicion analysis.

For
these reasons, we hold that the trial court did not err by denying Appellant=s motion
to suppress, and we overrule his first point.

2.     Evidence
of Prior DWI Conviction








In his
second point, Appellant complains that the trial court erred by allowing the
evidence concerning which it had granted a pretrial motion in limine (evidence
of Appellant=s prior arrests and conviction
for DWI) to be submitted to the jury during deliberations.  During its case-in-chief, the State offered
the videotape that contained statements relating to Appellant=s prior
arrests and conviction for driving while intoxicated.  Appellant affirmatively stated that he had no
objection to admission of the videotape, which was then admitted in its
entirety and without limitation.  See
Delgado v. State, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007).  The ruling on the motion in limine did not
preserve any complaint.  See Wilkerson
v. State, 881 S.W.2d 321, 326 (Tex. Crim. App.), cert. denied, 513
U.S. 1060 (1994); Gonzales v. State, 685 S.W.2d 47, 50 (Tex. Crim.
App.), cert. denied, 472 U.S. 1009 (1985).  Additionally, the conscientious trial judge
did all he could to limit the jury=s
viewing of the tape during deliberations to that portion which the jury had
requested, the sobriety tests.  We overrule
Appellant=s second point.

3.     Improper
Argument

In his
third point, Appellant argues that the State was allowed to mislead the jury in
closing argument.  The prosecutor stated,
ANow if
ya=ll can
figure that out, you=re smarter than me.  That means that his last drink was at the
time that he got there, apparently.  If
you=re only
there for an hour, your last drink can=t be an
hour before you leave the bar.  Does this
make sense?@

Appellant
argues that A[t]his false information was
extremely damaging to [him] in several ways.@  Appellant, however, did not object to the
argument below, nor does he provide legal authority to support his position on
appeal.  He has therefore failed to
preserve his complaint.  See Tex.
R. App. P. 33.1(a), 38.1(h); Mendez v. State, 138 S.W.3d 334, 341 (Tex.
Crim. App. 2004); Tong v. State, 25 S.W.3d 707, 710 (Tex. Crim. App.
2000), cert. denied, 532 U.S. 1053 (2001); Mosley v. State, 983
S.W.2d 249, 256, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999).  We
overrule his third point.

                                             Conclusion








Having
overruled Appellant=s three points, we affirm the
trial court=s judgment.

 

ANNE GARDNER

JUSTICE

PANEL: 
CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

 

PUBLISH

 

DELIVERED: 
January 15, 2009

 

 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-06-361-CR

 

 

ROBERT DAVID BRACKEN                                                    APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM COUNTY CRIMINAL COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                   DISSENTING OPINION

 

                                              ------------

This
case raises three significant issues, one of which the majority addresses,
albeit only in a footnote, and two of which the majority fails to address:

1.  Is this court correct to create a double
standard for reviewing rulings on motions to suppress, depending on whether the
trial court rules for or against the State?








2.  Alternatively, if we reach the merits of the
suppression issue, what weight do we give the trial court=s
implicit findings of fact when they are supported by a witness=s
testimony but contradicted by a videotape of those events?

3.  Further, when a law enforcement officer
testifies that his reasonable suspicion to detain the defendant was established
by a combination of three events, and the videotape shows that one or more of
those events did not occur, has the State proved reasonable suspicion to
justify the warrantless detention?

Because
the majority establishes a double standard for reviewing rulings on motions to
suppress, and, alternatively, in reaching the merits of the suppression issue
does not address the last two questions posed above, I respectfully dissent.

I.  Oral Ruling on Motion to Suppress








The
trial court orally denied Appellant=s
motions to suppress but did not enter a written order.  In his first point, Appellant argues that the
trial court erred by denying his motions to suppress.  This court has held that there is no
appealable ruling on a motion to suppress unless the trial judge enters a
written order.[4]  As noted in Cox, A[W]e
notified the State of our concern that we lacked jurisdiction over the appeal
because there is no appealable written order.@[5]  We concluded in the opinion that we indeed
lacked jurisdiction based on the absence of a written order.[6]

Following
the Rosenbaum court,[7]
we interpreted Aentered by the court@ to mean
the signing of a written order.[8]  We recognized that Rosenbaum dealt
with former appellate rule 41(b)(1), which required an appealable order signed
by the trial court, and which has been superseded by appellate rule 26.2(b),
which does not.[9]  And we did not address the fact that although
article 44.01(d) of the code of criminal procedure and appellate rule 26.2(b)
speak of a sentence to be appealed,[10]
the appellate timetable runs not from the signing of the written judgment and
sentence but from the pronouncement of sentence in open court.[11]








By
holding in Cox that the trial court does not enter an order granting a
motion to suppress until formally signing a written order, even though the
ruling and findings of fact and conclusions of law have been pronounced on the
record in open court, we allowed the State more than six extra months to
perfect its appeal.  Yet, in the case now
before this court, the majority holds that the trial court enters an order
denying a motion to suppress when the trial court pronounces its ruling orally.[12]  The majority states that the appeal lies
because after a trial is concluded, the appellant is appealing from Aa final
judgment of conviction.@[13]  But the majority confuses the criminal rules
of procedure with the civil rules of procedure. 
While the appellate timetable in a civil case runs from the signing of
the judgment, the appellate timetable in a criminal case begins to run when the
sentence is pronounced orally in open court.[14]  The judgment may be signed days or even weeks
later in a criminal case and has no effect on the appellate timetable.








To
remain consistent with the rule of Cox, we should hold that because
there is no written order denying Appellant=s
motions to suppress, there is nothing to appeal from the suppression ruling,
and we should dismiss the issue.[15]  The majority, however, holds that when a
defendant appeals from a ruling on the motion to suppress, no written order is
necessary.

II.  The Officer=s
Testimony vs. The Exhibits

Further,
in reaching the merits of the suppression issue, the majority does not address
the significance of the conflicts between the officer=s
testimony and the objective evidence.  In
the trial court, Tarrant County Sheriff=s Deputy
Howard Johnson testified that while on patrol around 1:30 a.m. on September 1,
2004, he observed a green Lincoln driving eastbound on FM 1187.  Appellant was the driver of the vehicle.  Johnson testified that he saw the vehicle
fail to maintain a single lane; specifically, he said that he saw about a
fourth to half of the vehicle cross over the yellow center lane divider and
into the westbound lane.  Although he
later turned on his video camera, he did not record the driving he described at
this point.








Johnson
testified that he then began to follow the vehicle.  He said he saw the car drive over the center
line at least once more and that he noticed the vehicle weaving Arythmatically@ within
the traffic lane.  At some point while
following the vehicle, Johnson turned on his in-car camera.  He denied that Appellant was speeding and
testified that he would have stopped Appellant had Appellant been
speeding.  Johnson did testify, however,
that Appellant Afail[ed] to maintain a single
lane several additional times.@

The
pertinent portion of the transportation code provides, AAn
operator on a roadway of sufficient width shall drive on the right half of the
roadway. . . .@[16]  The videotape, still photographs, and
testimony reveal that the roadway in the stretch in question is a narrow,
winding road with no shoulder and with concrete barriers and barrels along the
far edge of the roadway.  A sign warns of
the narrow road, and Johnson admitted that it could be safer to Aget a
little bit further away from a no-shoulder if there=s no
other traffic coming.@ 
As the majority concedes, Johnson himself was unable to confine his
vehicle to the right-hand lane, although he testified that there was Aadequate
room on the roadway.@ 
Appellant testified at the suppression hearing that he never crossed the
center line.








Johnson
testified that he stopped Appellant=s
vehicle because of two instances of driving over the center line and @rhythmatic
weaving@ that,
to him, was indicative of intoxication. 
The videotape does not support the officer=s
description of Appellant=s driving.  Indeed, Appellant=s
driving reveals no evidence of impairment and nothing that would provide
reasonable suspicion of impairment that would justify a detention.  

The
majority substitutes its determination of reasonable suspicion for Johnson=s,
although the majority relies on his testimony that he saw Appellant=s
vehicle cross the center line.  Johnson
testified that he stopped Appellant because he had reasonable suspicion that
Appellant was intoxicated and constituted a danger to himself, based on seeing
him cross the center line twice and weave within his lane.  The majority disagrees and says that Johnson
stopped Appellant because he had reasonable suspicion that Appellant had
violated section 545.051.








Although
the standard for determining reasonable suspicion is an objective one, in that
there need only be an objective basis for the stop, and the subjective intent
of the officer conducting the stop is irrelevant,[17]
when the officer states objective bases for the stop that are disproved by the
physical evidence, here, the videotape, how much deference do we give the trial
court=s
implicit findings of fact?  When the
still photograph of the roadway shows a lane so narrow that the vehicle depicted
is riding the center stripe, how much deference do we give the trial court=s
implicit finding based on Johnson=s
testimony that the lane was not especially narrow?  Again, it is a violation of section 545.051
to cross the center stripe only when the roadway is Aof
sufficient width.@[18]  The majority does not discuss these important
questions.

Johnson
testified that reasonable suspicion to detain Appellant was provided by the
combination of Appellant=s crossing the center line
twice, once on videotape and once unrecorded, and weaving Arhythmatically@ within
his lane.  The videotape disproves
Johnson=s
testimony.  How much weight do we give
the trial court=s implicit finding that Johnson
made these observations when the videotape contradicts his testimony?  The majority does not discuss this important
issue.

III.
Conclusion

Because
the majority establishes a double standard for rulings on motions to suppress,
and, alternatively, does not address the deference we should afford a trial
court=s
implicit findings when objective, physical evidence conflicts with an officer=s
testimony on which the findings are based, I respectfully dissent.

 

LEE ANN DAUPHINOT

JUSTICE

PUBLISH

 

DELIVERED: 
January 15, 2009











[1]The dissent contends that
we are imposing a double standard for defendants and the State by allowing this
appeal when the trial court did not reduce its denial of the motion to suppress
to writing.  The dissent urges that we
should follow our opinion in Cox v. State, 235 S.W.3d 283 (Tex. App.CFort Worth 2007, no
pet.).  In Cox, we held that the State
could not appeal from the grant of a motion to suppress evidenced by
only a docket entry because the trial court had not Aentered@ its ruling by reducing
it to a signed written order, which we held was required by article 44.01.  Id. at 284; see Tex. Code
Crim. Proc. Ann. art. 44.01(a)(5) (Vernon Supp. 2008) (providing State entitled
to appeal from grant of motion to suppress); art. 44.01(d) (providing appeal
may not be taken more than fifteen days after order Aentered@ by court); Tex. R. App.
P. 26.2(b) (providing State=s time to appeal runs from date trial court Aenters@ order).  Such an appeal is interlocutory and strictly
governed by statute and is entirely different from the appeal in this
case.  We have never held that a written
order denying a motion to suppress is a prerequisite to a defendant=s appeal from a final
judgment of conviction, and nothing in the code of criminal procedure supports
such a requirement.  See  Tex. Code Crim. Proc. Ann. art. 44.02 (Vernon
2006); Tex. R. App. P. 25.2(a)(2); Montanez v. State, 195 S.W.3d 101,
105 (Tex. Crim. App. 2006) (holding defendant appealing the denial of a motion
to suppress was not required to request a ruling or object to trial court=s refusal to rule when
record showed that trial court implicitly overruled motion to suppress); Flores
v. State, 888 S.W.2d 193, 196 (Tex. App.CHouston [1st Dist.] 1994, pet. ref=d) (holding that signed
docket entry evidences trial court=s ruling on motion to suppress evidence even when
denial of motion to suppress appears nowhere else in record).





[2]Because a routine traffic
stop typically involves only a short, investigative detention, as opposed to a
custodial arrest, we analyze traffic stops under the principles developed for
investigative detentions set forth in Terry v. Ohio, 392 U.S. at 22, 88
S. Ct. at 1880; see Berkemer v. 
McCarty, 468 U.S. 420, 104 S. Ct. 3138 (1984); Martinez v. State,
236 S.W.3d 361, 369 (Tex.  App.CFort Worth 2007, pet.
dism=d, untimely filed).





[3]We recently analyzed
section 545.060(a) and the circumstances under which it gives rise to a
reasonable suspicion of a traffic violation in Fowler v. State, 266
S.W.3d 498 (Tex. App.CFort Worth 2008) (en
banc) (holding testimony that defendant=s vehicle crossed into an adjacent same-direction
lane one time by a tire=s width and touched the
white line two more times when it was not unsafe to do so did not show a
reasonable suspicion for a traffic stop), pet. stricken, 2008 WL 5245352
(Tex. Crim. App. 2008).





[4]State v. Cox, 235 S.W.3d 283, 283,
285 (Tex. App.CFort Worth 2007, no pet.)
(en banc).





[5]Id. at 284.





[6]Id. at 285.





[7]State v. Rosenbaum, 818 S.W.2d 398 (Tex.
Crim. App. 1991).





[8]Cox, 235 S.W.3d at 284.





[9]Id. at 284 & n.9.





[10]Tex. Code Crim. Proc.
Ann. art. 44.01(d) (Vernon Supp. 2008); Tex. R. App. P. 26.2(b).





[11]Tex. Code Crim. Proc.
Ann. art. 42.03, ' 1(a) (Vernon Supp.
2008); Tex. R. App. P. 26.2; Taylor v. State, 131 S.W.3d 497, 500 (Tex.
Crim. App. 2004).





[12]See majority op. at 3 n.1.





[13]Id.





[14]See Tex. R. App. P. 26.1,
26.2.





[15]See Cox, 235 S.W.3d at 285.





[16]Tex. Transp. Code Ann. ' 545.051 (Vernon
1999).





[17]Garcia v. State, 43 S.W.3d 527, 530
(Tex. Crim. App. 2001).





[18]Tex. Transp. Code Ann. ' 545.051.















 [A1]

Majority by Justice Gardner

Dissent by Justice Dauphinot